O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JEANNIE I. FOX-WIRTH, | ) | Case No. SACV 06-00988-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jeannie I. Fox-Wirth seeks judicial review of the Commissioner's final decision denying her application for Social Security Disability Insurance benefits. For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

Plaintiff was born June 8, 1952. (AR at 322). She has a high school education and relevant work experience as a bakery clerk and grocery checker. (AR at 22, 98, 103, 116, 322).

Plaintiff filed an application for Social Security Disability benefits on June 26, 2000, alleging disability since April 8, 1999, due

1   to dizziness, weakness in arms, an inability to stand for long periods
2   of time, confusion, and extreme pain. (AR at 76, 97).  Plaintiff also
3   attached an addendum stating that she had been diagnosed with
4   fibromyalgia and cervical neck disease, that she suffered from irritable
5   bowl syndrome, and noting that x-rays revealed disc degeneration. (AR at
6   104).  Her application was denied initially and on reconsideration. (AR
7   at 49, 58).

8       Plaintiff's first administrative hearing was held on December 4,
9   2001, in Orange, California, before Administrative Law Judge ("ALJ")
10  Barry S. Brown. (AR at 317-35).  Plaintiff testified, as did her best
11  friend, David C. Garlow.[1] (AR at 321-35).  Following that hearing, ALJ
12  Brown sent interrogatories to Dr. Glen A. Almquist, a Medical Expert
13  ("ME"). (AR at 338). Answers to those interrogatories were then
14  forwarded to Plaintiff's attorney who requested the opportunity to
15  cross-examine Dr. Almquist. (Id.).  As a result, a supplemental hearing
16  was held on October 24, 2002, for the sole purpose of questioning the ME
17  on his findings. (AR at 336-50).

18      On January 24, 2003, the ALJ denied Plaintiff's application for
19  disability benefits. (AR at 18-29).  The ALJ found that the Plaintiff
20  met the nondisability requirements for a period of disability and
21  disability insurance benefits set forth in section 216(i) of the Social
22  Security Act and met the insured status requirement through the date of
23  that decision. (AR at 22).  The ALJ further found that Plaintiff had not
24  engaged in substantial gainful activity since the alleged onset date of
25  disability, and that the medical evidence indicated that Plaintiff
26  suffered from degenerative arthritis of the cervical spine, degenerative

27

      [1]   Plaintiff was not represented by counsel at her first
28  Administrative hearing.

2

arthritis of the lumbosacral spine, and chronic pain syndrome. (AR at 22). The ALJ concluded that these impairments were severe within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR at 23). The ALJ also found that, while Plaintiff did not have the residual functional capacity ("RFC")[2] to return to her past relevant work, she retained the exertional capacity to perform "light work." (Id.). Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

Following the ALJ's decision, Plaintiff filed a request for review with the Appeals Council, which was denied. (AR at 6-8). Plaintiff then filed an action for judicial review in this Court. (AR at 419-423). However, on January 11, 2005, the parties stipulated to remand the matter for further administrative proceedings, including an order directing the ALJ to obtain vocational expert testimony as to what jobs an individual with Plaintiff's RFC could perform. (Id.).

The hearing on remand was held before ALJ Brown on December 8, 2005. (AR at 522-41). Vocational Expert ("VE") Alan Boroskin testified, and Plaintiff, represented by counsel, testified for a second time.

---

[2] Specifically, the ALJ found that Plaintiff retained the RFC to: sit for three hours at a time, and for a total of eight hours during an eight hour workday with routine breaks; to stand for two hours at a time, walk for one hour at a time, and to stand and/ or walk for a combined total of up to six hours in an eight hour workday, with an option to alternate between positions to alleviate discomfort; the capacity to lift and carry up to 10 pounds frequently and 20 pounds occasionally; to perform simple grasping and fine manipulation without restriction; to use the hands for pushing and pulling of leg controls up to 10-20 pounds; to use the feet for repetitive movements (as in pushing and pulling of leg controls) without restriction; with restrictions to occasional bending, squatting, climbing and reaching above shoulder height; a preclusion from crawling activities; and a mild restriction from work around unprotected heights. (AR at 23).

1  (Id.).

2      On April 24, 2006, ALJ Brown issued another unfavorable decision
3  and incorporated by reference his discussion of the medical evidence
4  from his 2003 decision. (AR at 364-70).   The ALJ again found that
5  Plaintiff met the insured status requirements of the Social Security Act
6  through her date last insured, and that she had not engaged in
7  substantial gainful activity at any time relevant to this decision. (AR
8  at 366).   The ALJ further found that Plaintiff suffered from:
9  "impairments of degenerative arthritis of the cervical lumbosacral
10 spine, chronic pain syndrome, fibromyalgia, and glaucoma which more than
11 minimally restrict her ability to perform basic work related activities"
12 and which were therefore severe within the meaning of the Social
13 Security Act. *See* 20 CFR § 404.1520(c).   However, the ALJ found that
14 Plaintiff did not have an impairment or combination of impairments that
15 met or was otherwise medically equal to one of the listed impairments in
16 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR at 367).   Furthermore,
17 the ALJ concluded  that Plaintiff maintained the RFC to sit for 3 hours
18 at a time, and for a total of 8 hours during an 8 hour work day with
19 routine breaks; to stand for 2 hours at a time, walk for 1 hour at a
20 time, and to stand and/or walk for a combined total of up to 6 hours in
21 an 8 hour workday, with an option to alternate between positions to
22 alleviate discomfort; the capacity to lift and carry up to 10 pounds
23 frequently and 20 pounds occasionally; to perform simple grasping and
24 fine manipulation without restriction; to use her hands for pushing/
25 pulling of arm controls up to 10-20 pounds; to use her feet for
26 repetitive movements as in pushing/ pulling of leg controls without
27 restriction; with restrictions to occasional bending, squatting,
28 climbing, and reaching above shoulder height; a preclusion from crawling

4

activities; and a mild restriction from work around unprotected heights. (AR at 367).

Additionally, the ALJ considered Plaintiff's statements concerning the intensity, duration, and limiting effects of her reported subjective symptoms "not entirely credible." (AR at 367). Specifically, the ALJ found that the objective medical evidence, Plaintiff's positive response to conservative medical care, the extent of her daily activities, and the evidence of symptom magnification, did not support Plaintiff's allegations of disabling pain. (Id.). The ALJ further found that Plaintiff was unable to return to any past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, there were jobs which existed in significant numbers in the national economy that she could perform. Thus, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520(g).

The Appeals Council denied review on September 18, 2006. (AR at 351-53). Plaintiff then commenced this action for judicial review.

On June 29, 2007, the parties filed a joint stipulation ("JS") of disputed facts and issues. Plaintiff contends that the ALJ erred in his evaluation of the severity of Plaintiff's impairments and failed to consider the entire time period at issue. (JS at 3). Plaintiff also contends that the ALJ failed to properly assess Plaintiff's subjective symptoms and credibility. (Id.). Plaintiff requests an award of benefits or, in the alternative, remand for a new hearing to further evaluate the Plaintiff's ability to perform work within her residual functional capacity and for an evaluation, by a medical expert, of her medical impairments. (JS at 12). Plaintiff further asks that her credibility be assessed by the ALJ in accordance with the requirements

of Social Security Ruling ("SSR") 96-7p. (Id.). Defendant requests that the final decision of the Commissioner be affirmed.

## II.  **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. **Discussion**

### A.  **The ALJ Properly Assessed the Severity of Plaintiff's Impairments**

Plaintiff contends that the ALJ failed to properly assess the severity of her impairments. Specifically, Plaintiff argues that the ALJ failed to consider medical evidence from the entire time period at issue and failed to properly evaluate the opinion of her treating

6

1  physician, Shelly Heidelbaugh, M.D. (JS at 3-5).  For the reasons below,
2  the Court rejects Plaintiff's contention.

3       Plaintiff's insured status, for the purpose of her eligibility for
4  disability insurance benefits, expired on December 31, 2004. (See AR at
5  365).  Thus, the Plaintiff had the burden of proving that she became
6  disabled prior to that date. *See Marci v. Chater*, 93 F.3d 540, 543 (9th
7  Cir. 1996); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).
8  Since Plaintiff's alleged disability onset date was April 8, 1999, (see
9  AR at 76), the relevant time period for purposes of the ALJ's
10 determination of entitlement to benefits was from April 8, 1999 to
11 December 31, 2004.

12      The ALJ found that Plaintiff suffered from a number of severe
13 impairments during the relevant time period: degenerative arthritis of
14 the cervical and lumbosacral spine, chronic pain syndrome, fibromyalgia,
15 and glaucoma. (AR at 366).  Although the ALJ acknowledged that these
16 impairments caused significant limitations, including the inability to
17 perform her past relevant work (AR at 368), the ALJ nonetheless
18 determined that Plaintiff maintained the residual functional capacity
19 during the relevant time to, *inter alia*, sit for a total of eight hours
20 a day with routine breaks and stand and/or walk for a combined total of
21 six hours a day, with an option to alternate between positions to
22 alleviate discomfort. (AR at 367).  The ALJ also found that the
23 Plaintiff could only lift 20 pounds occasionally and ten pounds
24 frequently, and was limited to occasional bending, squatting, climbing,
25 and reaching above shoulder height, and was precluded from crawling.
26 (Id.).  The ALJ also found that Plaintiff could perform simple grasping
27 and fine manipulation without restriction. (Id.).
28 //

In making his findings, the ALJ considered medical evidence of Plaintiff's impairments from various sources, generated over a seven year period, from 1998 through 2005.[3] (See AR at 23, 367). This evidence included the observations and opinions of Dr. Gonzalo Covarrubias, who treated Plaintiff from April 1998 through December 2001. While under Dr. Covarrubias's care, Plaintiff underwent a series of epidural and steroid injections in 1999, and in 1999 and 2000, she participated in physical therapy for pain associated with cervical and lumbar degenerative disc disease. (AR at 23, 202). Subsequent testing by Dr. Covarrubias confirmed mild radiculopathy. (AR at 287). In December 2000, Dr. Covarrubias prescribed "a conservative treatment with medications, an exercise program and limited activity." (AR at 201). In December of the following year, Dr. Covarrubias again prescribed "conservative treatment" with exercises. (AR at 287). Dr. Covarrubias completed a letter to the Social Security Administration on May 29, 2002, in which he opined that Plaintiff's physical limitations preclude her from repeated bending, pushing, pulling, and lifting over 20 pounds or prolonged sitting. (Id.).

The ALJ also considered a July 2000 internal medicine consultation report and exam by Dr. Ismail Patel. (AR at 24). Dr. Patel acknowledged the likelihood of fibromyalgia and apparent decreased motion in the cervical spine. (See AR at 168-171). Nevertheless, Dr. Patal found no impairment related physical limitations. (AR at 171).

---

[3]   The earliest medical records cited by the ALJ were dated April 13, 1998, which noted that Plaintiff had been diagnosed with cervical and lumbar degenerative disc disease without radiculopathy or neurologic deficit. (See AR at 23, 209). The most recent medical report relied on by the ALJ was dated June 28, 2005, which confirmed that Plaintiff has advanced glaucoma in her left eye. (See AR at 514-18). The ALJ found that Plaintiff suffered from both impairments.

In his decision, the ALJ also noted a rheumatologic consultation report prepared by Dr. Alan R. Schenk on August 7, 2000. (AR at 25, 193). Although Dr. Schenk was able to account for Plaintiff's back and neck pain, as well as other symptoms suggestive of fibromyalgia, he suggested there was an "element of symptom magnification" present in her pain descriptions. (AR at 196). Dr. Schenk suggested a referral for physical therapy with an emphasis on therapeutic exercise. (Id.).

After reviewing Plaintiff's medical records, Medical Expert Glen Almquist, M.D., provided written responses (AR at 275-80) as well as testimony at Plaintiff's 2002 hearing (AR at 338-49) regarding the Plaintiff's medical condition. The ALJ ultimately adopted Dr. Almquist's opinion as to Plaintiff's residual functional capacity. (AR at 368). In doing so, the ALJ noted that Dr. Almquist's findings are even more restrictive than the State Agency medical consultant who assessed the Plaintiff with the capability for a full range of light work without any regard for the need to alternate between positions. (AR at 368). The ALJ also explained that Dr. Almquist's functional assessment generally comports with the opinion of Dr. Covarrubias that Plaintiff was precluded from prolonged sitting and repeated bending, pushing, pulling, and lifting over 20 pounds. (AR at 287, 368).

Contrary to Plaintiff's contention, the ALJ properly rejected the opinion of treating physician Shelly Heidelbaugh, M.D. with respect to Plaintiff's residual functional capacity. (See AR at 368). Plaintiff is correct that the opinion of a treating physician is generally given more probative weight than opinions from non-treating sources. *See* 20 C.F.R. § 404.1527 (d)(2). If the opinion of a treating physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

9

1   1996).  Even if it is contradicted by another physician, the ALJ may not
2   reject the opinion without providing specific and legitimate reasons
3   supported by substantial evidence in the record. *Id.*   Nevertheless,
4   "[t]he ALJ need not accept the opinion of any physician, including a
5   treating physician, if that opinion is brief, conclusory, and
6   inadequately supported by clinical findings." *Thomas v. Barnhart*, 278
7   F.3d 947, 957 (9th Cir. 2002).

8       On September 20, 2001, Dr. Heidelbaugh completed a Fibromyalgia
9   Residual Functional Capacity Questionnaire, in which she concluded that
10  Plaintiff is able to sit and stand/ walk less than two hours in an eight
11  hour work day with normal breaks and that she must be able to shift
12  positions at will; that she can lift less than 10 pounds; that she can
13  use her hands, fingers, and arms less than 10 percent during repetitive
14  activities for less than 10% of the day; and that she is likely to be
15  absent from work more than 3 times a month. (AR at 295-97).  The ALJ
16  found that the given the objective medical evidence, Plaintiff's
17  generally conservative treatment of medications, physical therapy, and
18  home exercise, "the assessments submitted by Dr. Heidelbaugh showing
19  [Plaintiff] as having a more restrictive functional capacity are given
20  no probative weight." (AR at 368).

21      The ALJ provided specific and legitimate reasons for rejecting Dr.
22  Heidelbaugh's opinion, and those reasons are supported by substantial
23  evidence in the record.  As noted by the ALJ, Dr. Heidelbaugh's opinion
24  was contradicted by Plaintiff's other treating physician, Dr.
25  Covarrubias. (AR at 368).  Although Dr. Covarrubias found that Plaintiff
26  was restricted from repeated bending, pushing, pulling, sitting, and
27  lifting over 20 pounds (AR at 287), he also observed no gross motor
28  weakness indicative of disabling pain. (AR at 24, 368).  As the ALJ also

explained, Dr. Covarrubias's functional assessment was generally consistent with that of Dr. Almquist. (AR at 287, 368). Indeed, after more than seven years of examinations and treatment by several different physicians, including state agency medical consultants, no other doctor assessed Plaintiff's functional capacity as severely as Dr. Heidelbaugh. *See* SSR 96-6p (1996) (findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources); 20 CFR § 416.927(f) (although not bound by their opinions, the ALJ must consider the evaluations made by state agency medical consultants because they are highly qualified experts in their field); *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ may reject the opinion of a treating or examining physician, based in part on the testimony of a non-treating, non-examining medical advisor).

The ALJ also properly relied on evidence in the record that revealed that the Plaintiff was frequently prescribed "conservative treatment", including Tylenol and Motrin, as well as home exercise. (See AR at 201, 202, 204, 210, 236, 242, 265, 266, 313, 460, 468). *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (stating that the "ALJ properly considered [treating physicians]'s failure to prescribe ... any serious treatment for this supposedly excruciating pain" in rejecting Plaintiff's complaints of pain); *Johnson v. Shala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Moreover, Plaintiff's treatment records repeatedly indicated that she was in no apparent distress and was well developed and well nourished. (AR at 430, 432, 435, 437, 439, 445, 447, 449, 451, 457, 461, 463, 465, 469).

Thus, Dr. Heidelbaugh's opinion is not supported by the objective

11

medical evidence in the record and the ALJ offered specific and legitimate reasons for rejecting it. Furthermore, for all of the reasons stated above, the ALJ's assessment of the severity of Plaintiff's impairments is free from legal error and supported by substantial evidence based on the record as a whole. No relief is warranted on this claim.

**B.   The ALJ Properly Assessed the Plaintiff's Testimony**

Plaintiff also contends that the ALJ failed to properly assess her testimony regarding her subjective symptoms. For the reasons below, the Court rejects Plaintiff's contention.

At her first administrative hearing on December 4, 2001, Plaintiff testified that she suffered from pain in her neck, head, arms, lower back, hips, legs, mouth, jaw, and stomach (AR at 323-24); that she experiences "blurred vision at different times" in both eyes (AR at 324-25); that feels constantly cold (AR at 325); that she is so weak that she "drop[s] everything" (AR at 326, 328); and that she has trouble sleeping (AR at 327). At the second administrative hearing in 2005, she testified that her symptoms had worsened. (AR at 526). Specifically, Plaintiff stated that she "is unable to hold onto things as well as I was" and her "memory and ability to communicate is lessened." (AR at 526). She also stated that: "Panic attacks are worse. The pain has worsened. Sleeping is even less. And the neck stiffness is increased intensely." (AR at 527).

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-step analysis. At the first step, the claimant must produce objective medical evidence of one or more impairments, and show that the impairment or combination of

impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).   The claimant is not required to produce objective medical evidence of the symptom itself or the severity of the symptom.  *Id*. at 1282 (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc)).   At the second step of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of his symptoms.   If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings giving clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id*. at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In his decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (AR at 367).  The ALJ explained that his assessment of Plaintiff's subjective complaints "did not differ from that previously expressed in the decision on remand" and "[t]hose reasons, which included the nature and extent of the [Plaintiff's] treatment, her positive response to conservative medical care, and the extent of her activities, and evidence of symptom exaggeration, all serve to diminish the [Plaintiff's] overall credibility." (AR at 368).

The ALJ's reasons for rejecting Plaintiff's subjective symptom testimony and credibility are well supported by the record.   The ALJ found that the objective medical evidence did not support Plaintiff's statements regarding the intensity and frequency of her pain.   As

13

already explained, treating physician Dr. Covarrubias consistently prescribed conservative treatment, such as Celebrex and regular exercise. (AR at 201, 202, 204, 209, 305-06); *see Meanel* , 172 F.3d at 1114. On October 15, 2002, Dr. Covarrubias found excellent maintenance of the joint spaces, normal hip function, some sensory deficit in the thumb and index but no gross motor weakness. (AR at 305). Moreover, Dr. Covarribias opined that Plaintiff could perform light work, and in 2000 discussed the possibility of returning to work with the Plaintiff. (AR at 202).

Furthermore, a treatment note dated July 2002, stated that Plaintiff looked comfortable despite allegations of pain and shortness of breath. (AR at 487). As already discussed, Plaintiff's treatment records repeatedly state that she appeared to be no apparent distress, was well developed, and well nourished. (See AR at 430, 432, 435, 437, 439, 445, 447, 449, 451, 455, 457, 461, 463, 463, 465, 469). As recently as 2005, the visualized portions of Plaintiff's knee and ankle joints were well maintained. (AR at 504). The ALJ also noted that, while Plaintiff had been diagnosed with glaucoma, the optic pressure in her eyes was controlled with medication resulting in nearly normal visual acuity. (AR at 515).

The ALJ also explained that, while David Garlow testified at the first hearing that Plaintiff was unable to concentrate, a psychiatric examination by Dr. Vintas found Plaintiff's concentration intact and her memory only mildly limited. (AR at 173-76). The ALJ again cited the evidence in the record that Plaintiff's rheumatologist believed that she was exaggerating her symptoms. (AR at 196).

Thus, although Plaintiff established that she suffered from medically determinable impairments which were reasonably expected to

14

produce the symptoms alleged, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.   No relief is warranted on this claim.

**V.    CONCLUSION**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: August 1, 2007

_____
Marc L. Goldman
United States Magistrate Judge